UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-21396-ALTMAN

**DERRICK GRANTLEY**,

    *Petitioner*,

v.

**RICKY DIXON, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS**,

    *Respondent.*
_____/

## ORDER

The Petitioner, Derrick Grantley, has filed a habeas petition under 28 U.S.C. § 2254, attacking the constitutionality of his state-court convictions and sentences. *See* Petition [ECF No. 1]. The Respondent says that "his petition is untimely," Response [ECF No. 12], at 24, and that Grantley "cannot meet the requirements to the actual innocence exception to AEDPA's limitations period," *id.* at 26. Grantley replied. *See* Reply [ECF No. 15]. After careful review, we agree with the Respondent and **DISMISS** the Petition as time barred.

## THE FACTS

On February 11, 1998, Grantley was charged in Florida's Eleventh Judicial Circuit Court with two counts of armed robbery, one count of burglary with an assault, two counts of armed kidnapping, four counts of sexual battery with a deadly weapon, one count of aggravated battery, and one count of armed carjacking in Case No. F98-3144B. *See* Indictment [ECF No. 13-1] at 145–50. The next day, he was charged with an additional count of armed burglary of a conveyance with an assault in Case No. F98-5013. *See* Information [ECF No. 13-1] at 144.

Grantley pled guilty to all twelve counts. *See* Plea Agreement [ECF No. 13-1] at 152–56. On May 7, 1999, in Case No. F98-3144B, Grantley was sentenced to fifteen years in prison for aggravated

battery and thirty-five years in prison, followed by a fifteen-year term of probation, on the remaining counts. *See* Judgment [ECF No. 13-1] at 165, 174–75. That same day, in Case No. F98-5013, Grantley was sentenced to another thirty-five years in prison—to be followed by fifteen years of probation. *See id.* at 167.

Grantley's order of probation advised him that the "conditions of [his] probation" could be revoked if he ever violated the law again—and that the state court could thereafter "impose any sentence which it might have imposed before placing [him] on probation[.]" *Id.* at 172. Grantley's sentencing guideline scoresheet indicated that "[a] life sentence may be imposed at the discretion of the court" if his "total sentence points are 363 or greater"; as of his sentencing, he'd accumulated 988 "sentence points." Sentencing Guideline Scoresheet [ECF No. 13-1] at 159.

In 2003, while he was incarcerated, Grantley was charged with one count of attempted first-degree murder and one count of aggravated battery on a law enforcement officer. *See* Amended Information [ECF No. 13-3] at 196. Grantley pleaded no-contest to attempted first-degree murder and was sentenced to twenty-five years in prison as a habitual felony offender. This additional sentence was to be served concurrently with his sentences in Case Nos. F98-3144B and F98-5013. *See* Judgment and Sentence [ECF No. 13-3] at 207, 210. Four years later, Grantley—still in custody—was arrested in Case No. F07-9964 for battery on a law enforcement officer. *See* Motion to Revoke Probation [ECF No. 13-3] at 224.

With charges still pending in Case No. F07-9964, the Respondent moved to revoke Grantley's probation in Case Nos. F98-3144B and F98-5013. *Ibid.* On January 22, 2008, the state court determined that Grantley had violated the conditions of his probation and resentenced him to life in prison on all counts (except aggravated battery) in Case No. F98-3144B, and to life in prison on the one count in Case No. F98-5013. *See* Order Correcting Sentence [ECF No. 13-3] at 227–35. It granted

him a belated appeal of his new sentence and probation revocation on January 11, 2010. *See* Case No. 3D2009-3415 Docket [ECF No. 13-3] at 237.

That same year, the Supreme Court decided *Graham v. Florida*, holding that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. 48, 82 (2010). Grantley then filed a state postconviction motion, arguing that his "life sentences without parole, which were imposed upon the revocation of probation," violated *Graham* because he "was 15 years old at the time he committed the subject offenses[.]" Answer Brief of Appellee [ECF No. 13-4] at 79. On June 4, 2014, Grantley was resentenced in Case No. F98-3144B to fifty years in prison on all counts (except aggravated battery) followed by a ten-year term of probation, and he was similarly resentenced in Case No. F98-5013 to fifty years in prison and ten years of probation, with both sentences to run concurrently. *See* Sentence [ECF No. 13-4] at 181–83.[1]

Two years later, the Florida Supreme Court held that juvenile non-homicide offenders whose sentences violated *Graham* needed to be resentenced under state juvenile sentencing legislation (now codified in Florida Statutes §§ 77.082(3)(c) and 921.1402). This new legislation entitled all such offenders with sentences "longer than twenty years" to "judicial review," *Kelsey v. State*, 206 So. 3d 5, 8 (Fla. 2016) (relying on *Henry v. State*, 175 So. 3d 675 (Fla. 2015)), so as to assure them "a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation," *Graham*, 560 U.S. at 75.

---

[1] To be clear, June 4, 2014, is the date on which Grantley's sentence was signed and announced, not the date the sentence was filed. Unfortunately, we can't tell when the sentence was docketed because the state-court clerk's file stamp is too blurry to read, *see* Sentence [ECF No. 13-4] at 181–83, and the docket entries merely narrow the filing window to somewhere between June and July 2014, *see generally* Docket, *State v. Grantley*, Case No. F98-3144B (Fla. 11th Cir. Ct.). Since we have no way of knowing when the sentence was entered, we'll use June 4, 2014, as Grantley's judgment date. As we'll explain— and as Grantley himself admits—his habeas petition is plainly untimely, so the exact judgment date is irrelevant.

On February 8, 2017, the Third District Court of Appeal ("Third DCA") affirmed the revocation of Grantley's probation but reversed and remanded so that Grantley's sentence could be corrected under *Kelsey* and *Henry* to reflect that he was eventually entitled to judicial review. *See* Third DCA Opinion [ECF No. 13-4] at 103–05. After the Respondent unsuccessfully moved for rehearing en banc, *see* Order Denying Motion for Rehearing En Banc [ECF No. 13-4] at 121, it sought discretionary review in the Florida Supreme Court, which denied its petition on May 22, 2017, *see* Order Denying Petition for Review [ECF No. 13-4] at 150. On February 12, 2018, the state court modified Grantley's sentence to indicate that he was "entitled to a judicial review twenty-five (25) years from his original sentencing date" in Case Nos. F98-3144B and F98-5013, but otherwise ordered that "[a]ll other sentencing conditions remain the same." Agreed Order [ECF No. 13-4] at 184.

On April 9, 2018, Grantley filed a state postconviction motion under Florida Rule of Criminal Procedure 3.850 ("First Rule 3.850 Motion"), attacking the voluntariness of his 1999 plea agreement. *See* First Rule 3.850 Motion [ECF No. 13-4] at 186–96. On September 14, 2018, the trial court denied Grantley's First Rule 3.850 Motion as both untimely and barred under the doctrine of laches. *See* Order Denying First Rule 3.850 Motion [ECF No. 13-4] at 219–28. The Third DCA affirmed the denial of his First Rule 3.850 Motion and issued its mandate on November 7, 2019. *See* Case No. 3D2018-2508 Docket [ECF No. 13-4] at 234.

On October 1, 2018, Grantley filed another postconviction motion under Rule 3.850. *See* Second Rule 3.850 Motion [ECF No. 13-4] at 230–47. The trial court denied Grantley's Second Rule 3.850 Motion as untimely and successive. *See* Order Denying Second Rule 3.850 Motion [ECF No. 13-4] at 255–64. The Third DCA dismissed his appeal as untimely without prejudice to Grantley seeking a belated appeal, which he did. *See* Order Dismissing Appeal [ECF No. 13-6] at 5. The Respondent didn't oppose Grantley's eventual appeal, so the Third DCA reversed the dismissal and issued its mandate on February 17, 2020. *See* Case No. 3D2019-1826 Docket [ECF No. 13-6] at 44.

4

On March 29, 2021, Grantley filed yet *another* postconviction motion under Rule 3.850, claiming that his trial counsel was ineffective for failing to move to withdraw his plea. *See* Third Rule 3.850 Motion [ECF No. 13-7] at 63–76. The trial court denied the motion both as "grossly untimely" and on the merits. *See* Order Denying Third Rule 3.850 Motion [ECF No. 13-7] at 98–111. On appeal, the Third DCA issued a per curiam affirmance and later denied Grantley's motion for rehearing en banc and issued its mandate on January 7, 2025. *See* Case No. 3D2023-2285 Docket [ECF No. 13-7] at 113–17.

Grantley thereafter filed several *pro se* pleadings in state court, including a petition for writ of mandamus, and was eventually barred from submitting any further *pro se* filings on January 24, 2024. *See* Final Order Barring Further Pleadings [ECF No. 13-7] at 157–58. On March 14, 2025, Grantley filed *this* federal Petition, again alleging that his trial counsel was ineffective for "failing to file a motion to withdraw plea at the defendant's sentencing and probation hearing." Petition at 5.

## THE LAW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a person in custody pursuant to the judgment of a State court" has one year to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

5

>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2244(d)(1)(A)–(D).

AEDPA's limitations period can be tolled in three ways. *First*, there's "statutory tolling": The limitations period will be tolled for any period "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" before the state court. 28 U.S.C. § 2244(d)(2). *Second*, a petitioner may avail himself of "equitable tolling" if he can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). *Third*, in extremely limited circumstances, a habeas petitioner can present an untimely claim if he shows that he's "actually innocent" of the crime. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) ("[Actual innocence] serve[s] as a gateway to consideration of constitutional claims time-barred under AEDPA's one-year limitations period.").

To avail himself of the actual-innocence exception, a petitioner must satisfy two elements. *One*, he must "support the actual innocence claim 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). In this context, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (cleaned up). *Two*, he must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." *Rozzelle*, 672 F.3d at 1011 (cleaned up).

6

**ANALYSIS**

Grantley and the Respondent agree that the Petition is untimely. They disagree, though, on whether the Petition satisfies one of the three AEDPA timeliness exceptions. Grantley insists, citing *Martinez v. Ryan*, 566 U.S. 1 (2012), that we should reach the merits of his Petition "in order to prevent [a] fundamental miscarriage of justice" because he "did not have an attorney to file his initial or any post-conviction . . . motion" in his state proceedings. Petition at 16. When we directed a response, we (very) liberally construed an actual-innocence defense from Grantley's argument. *See* Order to Show Cause [ECF No. 6] at 1 ("To overcome § 2244(d)'s time-bar, Grantley argues that we should nevertheless review his Petition 'to prevent [a] fundamental miscarriage of justice[.]' [ ] Based on this claim, we think Grantley is arguing that he meets the 'actual innocence' exception to AEDPA's one-year limitations period." (cleaned up)). The Respondent counters that Grantley "cannot meet the requirements of the actual innocence exception to AEDPA's limitations period" because he's failed to identify any "new evidence" of his innocence. Resp. at 26. We agree that the Petition is untimely and that Grantley can't satisfy a timeliness exception.

    **I.**    **The Petition is Untimely Under 28 U.S.C. § 2244(d).**

        **a. Grantley's operative judgment is the sentence imposed at his June 4, 2014, resentencing.**

Although the parties don't belabor the point, it's worth explaining why the Petition is untimely. As a preliminary matter, the operative judgment here isn't Grantley's 1999 conviction—it's the judgment that was entered when he was resentenced on June 4, 2014.[2] "[W]hen a petitioner is

---

[2] From what we can see, Grantley's June 4, 2014, corrected sentence doesn't contain a nunc pro tunc designation relating it to his original May 13, 1999, conviction. *See* Sentence [ECF No. 13-4] at 181–83. If it *had* been imposed nunc pro tunc, we'd ignore it, given that "a Florida court's corrected sentence, imposed nunc pro tunc, d[oes] not qualify as a new judgment because the nunc pro tunc designation 'relate[s] back to the date of the initial judgment[.]'" *James v. Sec'y, Dep't of Corr.*, 499 F. Supp. 3d 1169, 1174 (S.D. Fla. 2020) (Ruiz, J.) (quoting *Osbourne v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1261, 1266–67 (11th Cir. 2020)).

resentenced after AEDPA's one-year statute of limitations has expired for the original judgment of conviction and sentence, the judgment entered upon resentencing constitutes a new judgment holding the petitioner in confinement." *Murphy v. United States*, 634 F.3d 1303, 1311 (11th Cir. 2011). And "[w]here, as here, a defendant is re-sentenced, following revocation of probation proceedings, this new sentence constitutes a new judgment for purposes of calculating [ ] AEDPA's one-year limitations period." *Stennis v. Inch*, 2019 WL 13412418, at *5 (S.D. Fla. Aug. 23, 2019) (Reid, Mag. J.) (citation omitted), *report and recommendation adopted*, 2021 WL 11705688 (S.D. Fla. Feb. 2, 2021) (Smith, J.). Since the June 4, 2014, corrected sentence is the "most recent sentence that authorizes [Grantley]'s current detention," it constitutes the operative judgment in Grantley's case under AEDPA. *Vaughn v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 554, 555 (11th Cir. May 15, 2019).

It's true that Grantley's June 4, 2014, sentence was later "modified" by separate order on March 5, 2018, in which the state court, "by agreed [s]tipulation of the parties," allowed Grantley to seek judicial review 25 years from his original sentencing date with "[a]ll other sentence conditions remain[ing] the same." Agreed Order at 184. The Agreed Order, though, was nothing more than a "ministerial sentence correction," so it isn't a new judgment in Grantley's criminal case. *James v. Sec'y, Dep't of Corr.*, 499 F. Supp. 1169, 1174 (S.D. Fla. 2020) (Ruiz, J.) (holding that a "written order permitting for sentence review does not qualify as a new judgment"); *see also Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1326–28 (11th Cir. 2017) ("[B]ecause an order that corrects a clerical error likely would not create a new judgment, a petitioner would not be entitled to a second round of habeas review."); *Wiggins v. Sec'y, Dep't of Corr.*, 2023 WL 7017565, at *3 (M.D. Fla. Oct. 25, 2023) (Mizelle, J.) ("[A]s the state trial court's order did not authorize Wiggins's confinement or vacate his sentence and issue a new sentence, it did not result in a new judgment.").

### b. Grantley filed his Petition after the one-year limitation period expired.

All this means that Grantley's judgment became final on Friday, July 4, 2014—thirty days after it was rendered and when the window for a direct appeal closed. *See* 28 U.S.C. § 2244(d)(1)(A) (providing that "[t]he limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").[3] But Grantley's one-year limitation period didn't begin ticking that day because he was *still* appealing his January 22, 2008, life sentence and the revocation of his probation. *See generally* Docket, *Grantley v. State*, No. 3D2009-3415 (Fla. 3d DCA); Docket, *Grantley v. State*, No. 3D2010-0173 (Fla. 3d DCA). The Third DCA didn't resolve *that* appeal until February 2017—and, even then, the appeal continued until the Florida Supreme Court denied the Respondent's petition for discretionary review on May 22, 2017. The Respondent could have petitioned the U.S. Supreme Court for a writ of certiorari, but it didn't. *See generally* Docket, *State v. Grantley*, No. F98-3144B (Fla. 11th Cir. Ct.).

So, Grantley's one-year—365-day—limitation period began running on **Tuesday, August 21, 2017**,[4] the day after the Respondent ran out of time to seek certiorari review. *See Wilson v. Warden*, 2016 WL 11786419, at *3 (11th Cir. May 3, 2016) ("Therefore, his conviction became final 90 days later, . . . when the time for seeking review with the U.S. Supreme Court expired." (citing *Nix v. Sec'y,*

---

[3] *See also Innes v. Geico Gen. Ins. Co.*, 2014 WL 1456350, at *6 n.3 (M.D. Fla. Apr. 14, 2014) ("Under Florida law, a judgment becomes final after a final judgment has been entered and after the time to appeal, *i.e.*, 30 days, has expired without a notice of appeal having been filed." (citing FLA. R. APP. P. 9.110(b))).

[4] The Respondent's 90-day window to file a petition for writ of certiorari expired on a Sunday—August 19, 2017. So, consistent with the Federal Rules of Civil Procedure, the Respondent's last day to seek review in the U.S. Supreme Court would have been Monday, August 20, 2017. *See* FED. R. CIV. P. 6(a)(1) (providing that, "in computing any time period specified . . . in any statute that does not specify a method of computing time," courts should "exclude the day of the event that triggers the period," "count every day, including intermediate Saturdays, Sundays, and legal holidays," and "include the last day of the period," noting that, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"); *see also San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (relying on FED. R. CIV. P. 6(a)(1) in concluding that the petitioner's one-year limitation period "beg[an] to run from the day after the Supreme Court enter[ed] an order denying the petition for writ of certiorari" (citation omitted)).

*Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004))); *Butler v. Sec'y, Dep't of Corr.*, 2006 WL 2382479, at *1 (M.D. Fla. Aug. 17, 2006) (Kovachevich, J.) ("Butler's AEDPA limitations period began running on February 13, 2004, that is, the day after expiration of the time Butler had to seek direct review of the sentencing judgment." (citation omitted)); *Williams v. Dixon*, 2024 WL 147788, at *5 (S.D. Fla. Jan. 12, 2024) (Ruiz, J.) ("AEDPA's statute of limitations would have began to run the next day, May 8, 2002, 'because that is when the time for seeking Supreme Court review expired.'" (quoting *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006))).

Grantley's limitation period kept running for **232 days** until he filed his First Rule 3.850 Motion on April 9, 2018, which we'll assume was properly filed. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). A few months later, Grantley filed *another* Rule 3.850 Motion—which we'll also assume was properly filed—while his first one was still pending. His AEDPA limitation period therefore remained tolled until the Third DCA issued its mandate in his appeal of his Second Rule 3.850 Motion on February 17, 2020. *See Bismark v. Sec'y, Dep't of Corr.*, 171 F. App'x 278, 280 (11th Cir. 2006) (finding that the "limitation period remained tolled until the state appellate court issued its mandate affirming the denial of the Rule 3.850 motion"); *see, e.g.*, *Colvin v. Sec'y, Fla. Dep't of Corr.*, 2025 WL 1677437, at *2 (N.D. Fla. June 13, 2025) (Rodgers, J.) ("The clock remained paused until August 11, 2020, when the First DCA issued the mandate in the appeal of the trial court's denial of the Rule 3.850 motion." (citing *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000))). His AEDPA limitation period began to run the next day, **February 18, 2020**—leaving him **133 days** to file a federal habeas petition.

**Four-hundred-and-six days** later, Grantley filed his Third Rule 3.850 Motion on **March 29, 2021**. By that point, Grantley's AEDPA limitation period had long since expired, so his Third

10

Rule 3.850 Motion didn't have any tolling effect. *See Bland v. State*, 2017 WL 5668005, at *2 (11th Cir. Sept. 7, 2017) ("We have made clear that a state post-conviction motion filed after the expiration of the AEDPA limitation period has no tolling effect." (citing *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004))). This also means that *none* of Grantley's subsequently filed *pro se* pleadings could have tolled his already-expired AEDPA limitation period.

Since Grantley didn't file his federal Petition until **March 14, 2025**, we agree that it's untimely.

**II. Grantley Doesn't Satisfy an Untimeliness Exception.**

Since Grantley's Petition is untimely, we'll consider the merits *only* if (1) one of the alternative limitations periods under § 2244(d)(1) applies; (2) he can avail himself of equitable tolling; or (3) he meets the "actual innocence" exception. Because a habeas petitioner "has the burden of establishing his right to federal habeas relief," Grantley must at least *allege* that his Petition is timely under one of these alternatives. *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001). We can dispose of the third exception right away. As we explained, we construed Grantley's petition quite liberally as invoking the actual-innocence exception. *Cf. Smith v. United States*, 420 F. App'x 944, 945 (11th Cir. 2011) ("We construe *pro se* filings liberally to afford review on any legally justifiable base." (cleaned up)). Grantley didn't appreciate our solicitude, as he's informed us on reply that we apparently "misinterpreted [his] argument" and that he "never stated anything concerning the actual innocence clause[.]" Reply ¶¶ 1–2. He's therefore expressly waived any actual-innocence arguments he could've made. Because Grantley "[is] not argu[ing] that he can prove actual innocence, we find it unnecessary to consider whether he may obtain review based on actual innocence." *DiPietro v. United States*, 251 F. App'x 606, 608 (11th Cir. 2007).[5] So, we'll ask only whether Grantley meets the first or second untimeliness exceptions. He doesn't.

---

[5] Even if Grantley hadn't waived this argument, he hasn't given us *any* new evidence by which we might conclude that he's innocent of the charged offenses. *See generally* Petition; *see also Lawrence v. McLaughlin*, 2015 WL 2338332, at *3 (M.D. Ga. May 13, 2015) ("Petitioner has not put forth any new

Where the petition form asked Grantley to explain "why [t]he one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar [his] petition[,]" he said the following:

> Petitioner did not have an attorney to file his initial or any post-conviction relief motion in this case, therefore, the procedural default of a sufficiently raised claim should be heard, in order to prevent fundamental miscarriage of justice and to avoid a manifest injustice and a clear violation of Petitioner's federally protected rights under the 6th, 8th, and 14th Amendment[s] to the United States Constitution. *See Martinez v. Ryan*, [566 U.S. 1] (2012).

Petition at 16 (cleaned up). In *Martinez v. Ryan*, the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17 (2012).

Grantley seems to be saying that, because he was unrepresented in his state postconviction proceedings, *Martinez* requires us to excuse his Petition's untimeliness just as it requires us to excuse the default on his ineffective-assistance claim. But that argument is wrong on its face, as "the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period." *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014). So, *even if* Grantley could defeat his procedural default under *Martinez*, that wouldn't help him overcome his *untimeliness* here. *See, e.g.*, *Esposito v. Sec'y, Dep't of Corr.*, 2023 WL 2021676, at *5 (M.D. Fla. Feb. 15, 2023) (Davis, J.) (holding that, to the extent the petitioner was "attempting to rely on *Martinez* to overcome the statute of limitations bar," he couldn't do so, "as the Eleventh Circuit has rejected that contention" (citing *Arthur*, 739 F.3d at 630)).

Grantley's argument also fails because it doesn't implicate either the statutory or the equitable tolling exceptions. Grantley, in fact, doesn't invoke either exception, so he's forfeited any such

---

evidence of innocence, and therefore has not satisfied the necessary threshold showing of actual innocence.").

12

argument. *See Hernandez-Morel v. Dixon*, 2023 WL 2734370, at *6 (S.D. Fla. Mar. 31, 2023) (Altman, J.) ("Hernandez-Morel, in other words, doesn't allege that there was an impediment to filing an application created by State action, a newly recognized constitutional right made retroactively applicable to cases on collateral review, or a new 'factual predicate' that couldn't have been discovered earlier through the exercise of due diligence, so he cannot avail himself of § 2244(d)(1)'s other limitations periods." (cleaned up)); *Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002) ("The *petitioner* has the burden of proving entitlement to equitable tolling by showing that extraordinary circumstances that were beyond his control and unavoidable even with diligence prevented filing the petition on time." (cleaned up)). In any event, Grantley's *pro se* status during his postconviction proceedings doesn't entitle him to special treatment now. *See, e.g., Rashard v. Sec'y, Dep't of Corr.*, 2017 WL 176906, at *2 n.3 (M.D. Fla. Jan. 17, 2017) (Davis, J.) ("[The petitioner's] *pro se* status, however, does not excuse his failure to file a timely petition in federal court. *Pro se* representation alone is not a meritorious excuse and is insufficient to warrant equitable tolling." (citing *Johnson v. United States*, 544 U.S. 295, 311 (2005))).

For all these reasons, then, Grantley's Petition is untimely, and he hasn't satisfied any of the untimeliness exceptions. We must therefore **DISMISS** the Petition as time barred.

### EVIDENTIARY HEARING

We don't need a hearing to develop the factual record in this case. "[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (cleaned up). Since the Petition is plainly untimely, a hearing would constitute a waste of judicial resources.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must show, in other words, that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because no jurists of reason would debate the correctness of our procedural ruling, we **DENY** any request for a COA.

\* \* \*

We therefore **ORDER AND ADJUDGE** that Derrick Grantley's Petition [ECF No. 1] is **DISMISSED** as time barred. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**. The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in the Southern District of Florida on November 10, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Derrick Grantley, *pro se*